Good morning. My name is Jessica Weltman, and I'm with the Federal Defenders of Montana, and today I represent Charles Connelly, who appealed from his revocation sentence based on due process violations that are not harmless. And in this case, the district court revoked Mr. Connelly on three grounds, finding that each violation was true. Two of them were two new fraud offenses, and one of them was an allegation that Mr. Connelly did in fact admit to, and that was absconding. And the district court did in fact give the maximum, the statutory maximum, of five year period of imprisonment based on this. And today, maybe starting at the end, I think the conclusion that we should draw is that even if this court, if the circuit court is certain that it would impose five years on Mr. Connelly for absconding to Mexico, based on that one admitted violation, this court must and should reverse, because it cannot know how the district court would exercise its discretion if in fact the due process violations, the hearsay that was admitted at the revocation hearing, if that was excised from the record. And if two of the violations, two of the new offense violations, were not found. Well, one of the, part of that evidence was apparently Ms. Mulley, is that the way you pronounce her name? Yes, Your Honor. And Ms. Mulley testified about the credit cards and the use of the cards by Mr. Connelly and all. Wasn't she a recipient witness to that portion of the testimony, that of the evidence? She was, Your Honor. So her testimony was not hearsay, but at the same time, so that in terms of the due process issue, she was in fact there, but she was not able to recall what had in fact happened at that time. Well, she recalled, she didn't recall the details, but she recalled that this gentleman was applying for credit cards in her name and which she hadn't asked for and that they were costing her money. The details were not all that material, were they? Well, the details, the problem that arose in that particular violation is the fact that while she admitted certain information and said that, yes, he used my credit card, what you also have in the petition is that she said, I allowed him to use my credit card. And there were certain questions about whether he had in fact continued to do that with her permission or not. And the FBI agent who came in to also testify, he was not originally on the case, and he had not interviewed any of the witnesses, and he had only looked at the evidence before him several years before and wasn't able to specifically answer the questions that Mr. Connelly had for him. It seemed to me that there was more of a problem with the event that dealt with getting, I think it was $1,300 from the person who was in jail, and Mr. Connelly representing that he was a lawyer and would help that individual. Yes, Your Honor. That testimony, that portion of the evidence seemed to be rooted in hearsay. And if it, if for some reason it were not to be considered, then your argument would be, well, this defendant got the maximum of five years because of three violations of supervised reliefs. But if there were only two as opposed to three, we should send it back to have the judge say, well, now what would your sentence be if there were only two as opposed to three? I suppose that's your argument. That is the argument. And when you look at the record that you have here, we can't tell for sure from the record what the district court would have done. We know that he revoked based on all three of the violations. And in giving the reasons for the term of years that he imposed, he didn't only speak about absconding. He did not only speak about Ms. Connelly. He spoke in general, in fact, quite a bit about fraud, and he believed that Mr. Connelly would continue to do this fraud, so the best thing to do was lock him up as long as he could, which he did, which was a statutory maximum in this case. And in that violation in particular, when you look at the due process that needs to be due, the revocation, it's a different – it's not an absolute due process, right, but there has to be some reliability. And in that violation in particular, there is no reliability. Basically, the probation officer even testified he was not, in fact, able to verify this evidence in any way. Well, there was some verification from Mr. Connelly himself who said at sentencing, as I recall, something to the effect of – I mean, he verified that he had, in fact, provided legal-like services to this man. The only thing he didn't verify was that he had acted as a lawyer – he had represented himself to be a lawyer. He did say that, and he said what the allegation was was that he had taken this money and hadn't, in fact, helped this Mr. Young. And what Mr. Connelly said is, I did what I said I would do. I helped him. I helped with these habeas petitions, and I helped with – he said he was a lawyer, and he wasn't a lawyer. The specific allegation was that he – simply that he had committed another federal, state, or local crime by false pretenses and cheats, which was at that point a North Carolina statute. False pretenses being that he said he was a lawyer, and he wasn't a lawyer. That is the thing, but what he did – he never said that he was a lawyer. And the one piece of corroborating evidence, I guess, to go with this, that he had a website from the time that he was in Mexico, that was years after the time of the allegation for – that Mr. Young had claimed that he had taken his money and not helped him out. And so the one piece of corroborating evidence that was – the only piece that was not hearsay evidence, besides, as you pointed out, Mr. Connelly's own statement that I helped this former person I was in prison with, that one piece of corroborating evidence doesn't, in fact, go to the fact that he did steal the money and didn't – took fraud upon that person. What was the statute of proof here? Was it – is it predominance or beyond a reasonable doubt? The district court judge had to find, by a preponderance of the evidence, that this occurred. But when you're looking at the due process and then allowing the hearsay, that the court must decide, if there is, in fact, a due process violation, that beyond a reasonable doubt that there was a due process violation. Or rather, that beyond a reasonable doubt that the outcome would not have been – the outcome would not have been the same had this happened. So while it is a preponderance of the evidence that the court must find, the evidence relied on, it must still be verified facts. It must be reliable. And what happened here is that there are not any indicia of reliability. I'd like to contain the next couple minutes, if I may. Thank you. May it please the Court. I'm Victoria Francis, Counsel for the United States in this proceeding. What is very clear from the case law on a revocation of supervised release is that the courts are going to look at each of these cases where there's an issue of the right to confront, a due process right to confront, when we're at the stage of supervised release revocation. And they're going to look at the facts of those cases to determine whether, in fact, that right to confront was violated. Because it is clear that you do not have the same full panoply of rights that you do when you're at the trial. This court, in comity, sort of set forth sort of the stair-stepping of analysis. And first the court's going to look at did the court do a balancing test between the defendant's right to confront and good cause as to why the witness isn't present. But even if the court does not do a balancing test, that error is not necessarily fatal, because the court will then analyze whether there has been, in fact, a confrontation right violated. And in comity, the court took pains to point out that this right to confront is not static. It's sometimes greater, depending on the facts, or lesser, depending on the facts. Well, isn't the misrepresentation of attorney, that's the thinnest of the allegations, isn't it? I mean, we've got a statement, a hearsay statement from somebody that he was representing himself as an attorney. How can he defend against that? Your Honor, I would say that in looking at, in this flexible approach, we already have a clear violation. He's gone to Mexico, and he's absconded, and there's a cascade of violations that follow. And nobody's contesting the absconding. But the importance of the hearsay evidence is one of the factors that this court looked at in Walker and in Hall. All right, but let's be specific. With regard to the lawyer allegation, the lawyer allegation was critical, as we just established in the dialogue before. That is, whether or not he actually provided the services isn't the point. The allegation was that he did it by false, even if he provided the services, he did it by false pretenses because he represented he was a lawyer, and it wasn't so. And the only evidence we have that he represented he was a lawyer is, I mean, it's not even clear who provided that information. At one point it was said to be the brother, and at another point it was said to be the prisoner. So even that's unclear as to where it came from. And then we have the fact that there was no attempt to show that either the brother or the prisoner wasn't available or couldn't have testified. We don't know why they didn't show up or they weren't asked to show up. So how can we possibly approve that? Well, in looking at this, Your Honor, we look at the corroborating fact that there is advertisements on the Internet where he's representing himself to be a lawyer in Great Falls, Montana. And even though that may be a few years after the fact, really what the district court is looking at is in addition to your admitted violation and in addition to the credit card violations where Ms. Mully was present to testify, we have you holding yourself out to the public as a lawyer. And it's that aspect. But that wasn't the charge. I guess it could have been. I mean, it could have been maybe a separate charge that he advertised himself to be a lawyer in Great Falls, Montana four years later, but it wasn't. Well, that's a corroborating factor. And the concern is the representation to the public as to the fact that someone is a lawyer. And when he made statements, he did not specifically deny that he didn't tell the person that he wasn't a lawyer. He basically said, I gave him the services. I was experienced in 2255s, and I gave him the services. And whether he had an opportunity, which is another factor this Court has recognized in determining did he have an opportunity to oppose the hearsay testimony, he was present and he never clearly said, I never held myself out as a lawyer, and he never clearly responded to this evidence that they were given prior to the hearing, where he's advertising on the Internet. This is really just one additional piece. And, again, the strength of the rest of the case on finding the violations, and here the violation of the credit card and the opening of bank accounts where the person is present to testify, this is an extra piece of concern that the Court is focusing on, how do I protect the community from this person who has basically run away and, frankly, Let's say hypothetically there were three charges of violations supporting the revocation. That's correct. Let's say hypothetically that two of them were sustainable on the current record and one of them wasn't. Would we then have to, and even if there were other facts, I mean in this instance the fact being that he did hold himself out to be a lawyer later on, but not as one of the charged violations. Would we have to remand for resentencing? No, Your Honor. Why? Because the first, determining whether there has been a clear violation of the confrontation right, which is a different confrontation right than when you were charged. No, no, I'm not asking you that. I'm saying suppose we concluded that there had been a violation of the confrontation right as to one of the three charges. Then we move to whether there is harmless, whether that violation was harmless. Right. Okay. And in looking at whether the violation is harmless, again, we're looking at what was the other evidence that there had been a violation, did the defendant have an opportunity to refute the consequences of the finding. This is like piling on on a misrepresentation aspect in a sense. But I'm asking you a different question if I understand your answer. Okay. You are assuming that we could uphold that charge. But I understand what I want to ask you. I want to ask you, suppose we concluded we could not uphold one of the three charges. One of the three charges is no good. We're vacating the finding that there was a violation for whatever reason. Okay. Then do we have to remand for resentencing? And what I'm inartfully trying to say is that even when we look at whether the error is harmless, the court is still looking at those factors to determine whether it's harmless. And if the court is determining, yes, there was a hearsay violation on the third charge, was that harmless in what the court did in this case? When the court is making virtually repeated statements about how the person ran away, how the person hasn't followed through with any aspect of the supervised release, when the court has already found that there have been violations and a breach of trust of members of the public, that this person ran almost as soon as that initial breach of trust occurred, and then when we have the piece of evidence that this is an individual who's holding himself out  that that would be harmless error because the court is focusing substantially on, we already have a breach of trust, we already have a need to protect the public, whether we have this one additional violation or not, and we already have an eight-year abdication of any follow-through on the supervised release. And the going to Mexico, putting you, a person beyond the reach of the law, and if he's advertising on the Internet holding himself out as a lawyer, it's hard for anyone to get justice if he's in Mexico and he has lured anyone into that. So that becomes, was that harmless error? I believe beyond reasonable evaluation of this record that was harmless error,  factors that are set forth in the statute. And the court went into great detail on this. Did he, was the five years just a straight five years, or was it broken down by violation? It was broken down by violation, Your Honor. Which one? One was a three-year violation. I think it was the bank fraud, the deceptive practice that he had pled guilty. The second, because there were two separate case numbers underlying, was a two-year violation, and he ran those consecutively. Okay. It didn't relate to the separate violations. It related to the separate underlying cases. It related to the underlying, the amount of time that one could sentence on the underlying case. So it was. But it wasn't broken down by replication. No, it was not. And that was why I was trying to inartfully point out, it's not like this third violation triggered a mandatory requirement, like, I don't know, a firearm enhancement might, or something of that nature, which elevates the importance and makes it less likely that the error could be harmless. This was, in a sense, a pile-on aspect. And even though this court didn't specifically weigh the test, we know that this comment is in 2001 from a gentleman in North Carolina, and whether we're going to fly him up to Montana nine years later, if we can even find the person, is one of those factors that, again, goes into what is his right to confront in this situation, especially when he is present and he doesn't deny dealing with this individual, he corroborates to, and he doesn't deny in essence performing attorney-like functions for this individual. He's really just saying, I gave him what he paid for, which is a nebulous response. He was present. He could have denied, he didn't even deny that he had opened 12 credit cards. He basically said, well, she told me I could use her credit card, but he didn't say that she told me I could open 12 credit cards. He didn't deny that he left records in Colorado when he up and left mysteriously and they didn't know where he left. So this isn't the same kind of case where we have only one key violation, like this court was facing in Perez where we have the lab test. That's the key violation. It's the only piece of evidence that shows the violation and the person wasn't given an opportunity. In that case, it was hearsay, but they said this would be a violation of confrontation because it said it was dilute and they didn't have an opportunity to double check it and didn't have an opportunity to ask the lab technician what was meant by this strange comment on the only piece of violating evidence that was out there. Thank you very much. And I think I'm over it. You are. This is going up. Yeah, right. Suddenly, thank you. To answer your question, assuming that one charge is no good, we throw it out. I think that on this record, we cannot say beyond a reasonable doubt that the due process violations, that the hearsay statements, contributed nothing to the sentence. And we know that because of the way that the district court discussed all of the different issues. They were not broken down into each issue. Supposedly, we meant it and there was not another charge, but he said, well, I understand I can't rely on that charge, but I happen to know that this guy was representing himself to be a lawyer later on after the fact. Could he take that into account in sentencing? Usually in sentencing, you can take things like that into account. Revocation hearings in particular are very open as to what you can take into account because you're looking at the breach of trust to the court. So the district court could take into account different information. But what would be preserved by remanding and allowing this to happen is the constitutional right to due process, which though not absolute in a revocation hearing, exists and where there isn't harmless error, it should be remanded in this case. I guess what I'm really asking you is, do you think there's any realistic possibility that Judge Molloy isn't going to do the same thing? I cannot say what's in the head of Judge Molloy. But I think that a lot of precedent from this court in terms of looking at sentencing and looking at the discretion that the district court has, I think this is the type of case where you have to, in fact, remand because it's the district court who has to make those decisions. Isn't that the question we're supposed to be asking, i.e., is it true beyond a reasonable doubt that nothing different is going to happen,  Isn't that the question? And if we can't answer the question, if our intuition is no way he's going to change his mind, why are we doing it? I think that it has to go to the district court when you can't tell from the record for certain what would happen. Okay. Thank you very much. Are you Jessica Weltman? Yes. Okay. Thank you. Thank you. The case of United States v. Connolly is submitted.
judges: Canby, Thompson, Berzon